## MALLE ET AL. v. HAYES ET AL.

*Wills—Contest—Verdict supported by evidence that writing last will and testament—Motion for continuance overruled where filed afternoon before hearing date—Correction of bill of exceptions—Mandamus denied or motion for diminution of record overruled—Counsel did not deny that bill of exceptions complete—Charge . to jury in absence of counsel not prejudicial, when—Proper requested instruction refused and subsequently given. ·*

1. Evidence in will contest case *held* to support jury's verdict to effect that paper writing in question was last will and testament of decedent.
2. Will contest case brought to Court of Appeals on petition in error could not be continued, where it had been properly listed for trial and been published two weeks under rule of court in official organ of courts and no steps were taken towards having case continued until after 4 o'clock of day before it was reached in court.
3. Court of Appeals will not issue writ of mandamus or grant motion for diminution of record to compel common pleas court to insert something in bill of exceptions, where inquires to counsel, in argument of case, seeking to elicit whether they claimed anything other than what appeared in bill of exceptions, brought only response that they would expect it to show certain things but did not deny that record showed all that took place.
4. In will contest case where court refused proper instruction requested by contestees and after case had been submitted court decided that instruction should have been given and notified counsel for contestees, who stated that he did not want to be present, but court was unable to reach counsel for contestants, action of court in giving instruction in absence of counsel *held* not misconduct subject to criticism.

(Decided September 19, 1927.)

Error: Court of Appeals for Cuyahoga county.

*Messrs. Bernsteen & Bernsteen,* for plaintiffs in error.

*Messrs. Boyd, Cannon, Brooks & Wickham,* for defendants in error.

VICKERY, J.   This action comes into this court on a petition in error to the common pleas court of Cuyahoga county.

The action in the court below was a will contest case, and the verdict of the jury was to the effect that the paper writing in question was the last will and testament of the decedent Mary Hayes.   A motion for a new trial was made and overruled, and it is to reverse the ruling of the court and the judgment on the verdict that this action is prosecuted here.

There are several very interesting questions involved, and it is not the first time that this case has been before this court.   Some months ago, perhaps a year or more, this same case was before this court, in which the now defendant in error, Bessie M. Hayes, was plaintiff in error, and the action in that case was to reverse the verdict of the jury and the judgment thereon by the court of common pleas in setting aside the will as not being the last will and testament of Mary Hayes, deceased.   At that time the case was presented fully to this court, and we became familiar with the facts, and after due consideration this court in a strong opinion by Judge Sullivan reversed and remanded the case to the common pleas court, and this was mainly on the ground that the verdict was so manifestly against the weight of the evidence that it tended to shock the conscience of the court when it reviewed the evidence in the case, for which reason,

among others, the case was reversed. Upon being remanded to the common pleas court, where it was retried, a judgment was rendered in accordance with the views expressed in the opinion of the Court of Appeals as to the verdict being manifestly against the weight of the evidence, the jury bringing in a verdict sustaining the last will and testament. The motion for a new trial was overruled and the verdict became the judgment of the court. There are, as already noted, several questions in this case, and first we will address ourselves to the question whether on the whole record this verdict is right.

We learn from this record that Mary Hayes, the decedent, died at the age of 90 years, leaving several grown children. The defendant in error, Bessie, and the plaintiffs in error are brothers and sisters, all of whom were well to do except possibly one, who will be mentioned later. From the record we learn that the husband of Mrs. Hayes, the father of the plaintiffs in error and the defendant in error in this action, died when the deceased in this action, Mary Hayes, was 73 years old, and he left to her, by will, I presume, 28 acres of land in Cuyahoga county, out near the Lorain county line. That 28-acre tract was the estate owned by Mrs. Hayes when she died, and it is that property over which this contest is had.

We learn from the record that, after the death of Mr. Hayes, Bessie Hayes lived with and supported her mother; that she rented a flat and furnished all the food and other supplies that her mother had during the entire period from the time of the death of her husband, when Mrs. Hayes was 73 years old, until her death at the age of 90; that

during the summer months, there being a small house upon this tract of land, Bessie and her mother lived upon this land, but otherwise they lived in town in a house supplied by Bessie; that the income from the farm would not more than pay for the expense of keeping it up, taxes, etc.; and that during the entire time from the death of her husband to her own death, for a period of 17 years, not one of the brothers or sisters of Bessie contributed anything at all to the support of their mother, except in one single instance one of the brothers brought a chicken to the house for the mother's use. Besides this one lone chicken, nothing was supplied by the other brothers or sisters for the care of the mother. One of them, William, had not visited his mother nor had she seen him for 15 years.

Five or six years before the death of Mrs. Hayes, she became rather ill, and then it seems that William, who was a doctor at Lorain, interested himself to the extent that he brought a lawyer from Lorain out to the country where his mother was living, a lawyer by the name of Harding, and there had Harding make a will which he had his mother sign. His mother permitted them to dictate the will, and at the instance of her son William and the lawyer Harding she signed this will and gave it to her son, who took it to the probate judge's office in Cuyahoga county and deposited it for safe-keeping, as the statute provides. After William had gone, his mother, Mrs. Hayes, made the remark that she was not going to have some one make a will for her; that she was going to make her own will. Thereupon she sent for Mr. Mellon, whom she had known, to come to the house

and make her will, which he did. She gave him all the facts and conditions which she wanted to embody in the will, which Mellon reduced to writing, and Mrs. Hayes subsequently signed this draft. It should be stated that prior to this time she had procured the will that was left on deposit in the probate judge's office in Cleveland. A few days later her son William, the doctor of Lorain, learning that his will had been taken from the probate judge's office, went, in a state of intoxication, to the house where his mother resided, and not only abused his mother, but knocked his sister Bessie down, and Mrs. Hayes ordered him out of the house. She then sent again for Mr. Mellon, and a new will was made, striking William's name out of the will, because of his conduct towards her and Bessie.

Subsequently one of Mrs. Hayes' sons, Joseph by name, came to the house and upbraided his mother and threatened what would be done in case she did not rewrite the original will that had been dictated by her son William and written by lawyer Harding of Lorain, whereupon Mrs. Hayes called Mr. Ewing, who is now Judge Ewing, who lived close by, and told him of the occurrence and asked him to make a new will, leaving her son Joseph out of the will. Mr. Ewing suggested that a codicil be attached to the will, and so a codicil was drawn disinheriting Joseph because of his conduct to his mother, which codicil was made, signed, and properly witnessed.

Subsequently, in pursuance of the threats of Joseph, or otherwise, the children who are plaintiffs in error in this action brought proceedings in the probate court to have their mother declared insane, and she was compelled to defend herself, and

Dr. Howard, as an expert, Dr. Drysdale, other doctors, the family physician, and others testified as to her sanity. Dr. Howard stated he knew of no person of the age of Mrs. Hayes who had such a keen mind, or a better mind than she. The result of those proceedings was that Judge Hadden, then probate judge, dismissed the complaint, having found Mrs. Hayes to be perfectly sane.

After this judgment of sanity by the probate judge, Mrs. Hayes then called Ewing and stated the circumstances to him, and said that she wanted to change her will; that she wanted to exclude from her will as beneficiaries those children who had participated in trying to find her insane. So in pursuance of these instructions, Judge Ewing prepared the will now in question, in which Mrs. Hayes disinherited all the children save Bessie and David, who seem to have been the only ones of the children who really were not forehanded, giving all the property to Bessie, save $500 a year out of the estate, until the sum of $2,500 was reached, to David. This will was properly signed and witnessed, and on the death of the old lady was admitted to probate by Probate Judge Hadden, and this contest was brought, alleging undue influence, incapacity to make a will, and various other things.

This record can be scanned from one end to the other without showing that Bessie Hayes in any way, shape, or manner participated in the making of the will. She was not present when any of the wills were made. There is no evidence that she ever talked to her mother or influenced her mother in any way. Instead of the will being made under influence, we think from both records that the will is a very just and righteous one, and the conduct

of the brothers and sisters of Bessie Hayes, the children of the decedent, does not reflect very much credit upon them, or any of them. The mother resented the method which they had taken to control her and get possession of her property, and such conduct would naturally incite the indignation of any person. Mrs. Hayes very apparently resented it and showed them that she was mentally sound and able to conduct her own business.

It must be borne in mind that during the entire 17 years the preservation of this tract of land was made possible only by Bessie keeping and supporting her mother, and for 17 years she had been her mother's constant companion and support in sickness and in health. It was only just and proper that she should have this property under the circumstances, the estate being worth $12,000 all told, $2,500 of which went to one of her brothers.

We have gone over this record, and we can see no reason for disturbing the verdict of the jury and the judgment thereon, so far as the record itself is concerned.

It is urged that there was error in the charge of the court. Perhaps the charge of the court was not couched in the best language possible, but we do not think the jury could have been misled in any way, shape, or manner by the charge. It simply refers to the evidence and the number of witnesses. If you eliminate the witnesses who did not testify upon any controverted question, or at least upon the question of undue influence or mental incapacity, who were not interested parties, so far as the interested parties were concerned more testified for the plaintiffs in error than for the defendants in error; but we do not think even if the charge

were erroneous in this respect, which we are not
prepared to say, that it was of any importance in
the adjudication of the issues in the instant case.

It is claimed, however, that this case should be
reversed for misconduct of the court, and in order
to reach that question several motions have been
filed, and a petition in mandamus has also been
filed asking this court to issue a writ of mandamus
against the court of common pleas that heard this
case. One of the motions referred to is a motion
to continue, and it is predicated upon the ground
that the plaintiffs wanted to bring a suit in man-
damus, or to suggest a diminution of the record
so as to get into the record certain things which
they claim are vital to their interest in this lawsuit
and do not appear therein. We have taken all
these matters under advisement to be disposed of
together.

We must refuse to grant the motion to continue,
for the reason that this case has been properly
listed for trial, and been published two weeks, un-
der the rule of court, in the Legal News, the official
organ of the courts of Cuyahoga county, and as no
steps were taken towards having this case contin-
ued or calling this court's attention to it until after
4 o'clock the day before it was reached in court,
under such circumstances, in order to dispatch the
business that is crowding the dockets of this court,
it would seem inexpedient at least to grant such a
motion. But all this will be taken care of later.

We learn from this record, and from the argu-
ments of counsel, and from the motions that were
filed, that this case was tried before one of the out-
of-town judges, sitting here by designation, and
that after the case had been submitted to the jury;

just at 12 o'clock, at the adjournment of the court, at 1 o'clock the court wanted to give some further instructions. It seems that the defendants in error had asked the court to give several special charges before argument, which said charges were in writing and presented to the court, among which was the following:

"Declarations of the testatrix made before the execution of the will, if you find that any were made by her, are admissible only for the purpose of showing her condition of mind, and must not be considered or used to prove the fact that undue influence or restraint was used to induce her to make the will in question, except in so far as they may evidence a condition of mind easily subjected to such influence at the time of the making and executing her will."

This request had been refused by the trial judge. After the case had been submitted to the jury, which as already stated was at noon, during the noon hour the court in thinking this matter over came to the conclusion that he had wrongfully refused that request, and made up his mind, on his own motion, to call the jury back and to give them that request, as he claimed he should have done before luncheon hour. Thereupon he asked the bailiff to notify Mr. W. H. Boyd's office and the office of M. L. Bernsteen, they being the respective lawyers for the contestees and contestants. The record shows that the judge had a talk personally with Mr. Boyd and told him what he was going to do and asked Mr. Boyd whether he wanted to be present, and Mr. Boyd informed the court that he did not. The record also shows that the judge sought to communicate with M. L. Bernsteen, and reached

the office of Mr. Bernsteen, both by the bailiff and himself, and was informed that M. L. Bernsteen was not in his office and that they did not know where to reach him. The court then called the jury back and gave this instruction and recited in the bill of exceptions just what took place, and in a letter to Mr. Bernsteen said that he might have an exception to that ruling.

A motion for a new trial was made and overruled, and, then, instead of filing a supplemental motion, a motion was made for a rehearing of the original motion and to vacate the entry overruling the motion for a new trial. This motion for a rehearing was overruled and exceptions were taken. When the plaintiffs in error prepared their bill of exceptions, objections were filed by Mr. Boyd as counsel for the contestees, and those objections were sustained by the court, and the bill of exceptions as presented was revamped and corrected, and ultimately signed by the court, which presented the record in this case to this court.

Now, yesterday, the day before the hearing in this court, an effort was made to have a writ of mandamus issue to compel the common pleas court to insert something in the bill of exceptions, and the claimed right to do that is based upon *Konigsberg* v. *Lamports Company,* 116 Ohio St., 640, 157 N. E., 477. That case went up from this county, and when in this court the common pleas was reversed for the reason that it had sent a communication through the bailiff to the jury, who had asked for further instructions. This court thought that that was error, and it thought the matter had been fairly presented by the bill of exceptions. Error, however, was prosecuted to the Supreme Court, and

the Supreme Court held that the matter complained of was not properly a part of the bill of exceptions and could not be considered by the court, and intimated that the only way it could be done would be by a writ of mandamus, and cited as authority for that the case of *Beebe, Judge,* v. *State, ex rel. Starr Piano Co.,* 106 Ohio St., 75, 139 N. E., 156. This court is familiar with that case, the writer of this opinion having written the opinion in the *Beebe case.* It must be remembered that that case differed from the instant case. Judge Beebe was presented with a bill of exceptions which he claimed was not correct or true. The judge failed and refused to correct and sign any bill of exceptions, and so a writ of mandamus was brought in the Court of Appeals, and the Court of Appeals directed Judge Beebe to correct and sign a bill of exceptions.

The instant case is unlike the *Konigsberg case.* There the court had signed the bill of exceptions and had refused to put certain things claimed into the bill of exceptions, and other than for the decision of the Supreme Court one would be compelled to wonder how a writ of mandamus would lie under the circumstances; but it must be noted that the decision of the Supreme Court, or rather the statement in the opinion of the Supreme Court in the *Konigsberg case,* is hardly authoritative, because that question of mandamus was not before the court. The question was whether the bill of exceptions was complete, and the court held that it was not, and it was by way of suggestion, and only by way of suggestion, that it was stated that mandamus would be the proper remedy to correct that bill of exceptions.

We have made somewhat of a search and can-

not find a single case where the court of common
pleas or the trial court has signed a bill of excep-
tions and certified it to be correct and a higher
court has compelled it by mandamus to put certain
things in which had been omitted. The practice
has always been by some other method. The writer
of this opinion distinctly remembers the case of
*Warner* v. *State of Ohio*, in which it was sought
to have the record show something which the court
had refused to put into the record, and the method
of getting at that was not by a writ of mandamus,
but by a suggestion of diminution of the record.
This court in that case took testimony to show the
circumstances surrounding the omitted part of the
bill of exceptions, and refused to have it inserted.
A bill of exceptions was prepared containing all
the testimony upon this question and the case was
carried to the Supreme Court (*Warner* v. *State*,
104 Ohio St., 38, 135 N. E., 249). The Supreme
Court sustained the Court of Appeals and declared
that it would not compel the insertion of this mat-
ter which had been left out or cut out by the trial
court.

It does not matter very much, however, whether
mandamus would lie in this case, or whether the
end be attained by motion in diminution of the rec-
ord, for a steady line of inquiries addressed to the
counsel in the argument of this case, seeking to
elicit whether they claimed anything other than
what appeared in the bill of exceptions, failed to
obtain any response upon that subject that was
satisfactory; the answer being only that they would
expect it to show certain things, but nowhere deny-
ing that the record showed all that took place. So
now, if that be so, by writ of mandamus this court
could order the court below to do nothing, for

everything that was done was done; nor could the end be attained by diminution of the record, because everything that took place was in the record; and, if it were erroneous for the court to do what he did do under the circumstances, it is clear enough in the record just what the court did, and the bill of exceptions shows this, and so we are compelled to refuse the issuing of a writ of mandamus, and are also compelled to refuse the motion for a diminution of the record.

Now, then, the question that is fairly before the court is this: Was the action of the court right in the instant case, if he had made up his mind that he had erroneously refused this request, in informing the jury and correcting the error before it was too late? This court has gone as far as any court in frowning upon a trial court giving further instructions in the absence of counsel, after the case has been submitted to the jury. In the case of *Sunshine* v. *Beckenbach Company*, decided by this court December 15, 1924, we reversed the case because the court, at the request of the jury, gave instructions without notifying or attempting to notify counsel in the case. The case never went to the Supreme Court in so far as we are informed, but subsequently the case was remanded and retried. And in the *Konigsberg case* we do not understand the rule of the Supreme Court to be contrary to the notion of this court in respect to the conduct of the common pleas court, only that it was not brought into the record.

Referring to the instant case, here was a case wherein the court had come to the conclusion that he had committed a palpable error, and so he undertook, in the administration of justice, to

rectify his error before it was too late. He attempted to notify the lawyers. He reached one and was told by that one that he did not care to be present. He sought to notify the other, and reached his office, but for some reason the lawyer, though just out of the trial of the action, and the jury being out, absented himself from his office without notifying his office where he could be found. Then what was the court to do under such circumstances? What he did do seems to us to be the just and right thing. He called the jury in and gave them the instruction, and so far as this record is concerned he did not say other to the jury than that charge, with the preliminaries which led up to it, which did not in any way bear upon the lawsuit, and in the letter to Mr. Bernsteen he offered to give him an exception to the giving of that instruction. It is not argued here that that instruction was wrong, and we ourselves cannot see anything wrong with the instruction.

Now upon what theory should this court reverse the judgment because of the conduct of the judge? We cannot say that there was any misconduct that could be criticized in any way, shape, or manner, in the instant case. The court did all that was in his power to do, and if the lawyers were not in touch with the court it was not the fault of the court.

We have gone over this whole record, and we think that the record abundantly justifies the verdict of the jury, and there being no reversible error in the record the judgment is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and LEVINE, J., concur.